IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 06-cv-00253-PSF-MJW

ARTEMIO ORNELAS, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

SONIC-DENVER T, INC.;
SONIC AUTOMOTIVE, INC.; and
TOYOTA MOTOR CREDIT CORPORATION,

    Defendants.

---

## ORDER ON DEFENDANTS' MOTION TO STAY AND COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS

---

This matter comes before the Court on the motion of Defendants Sonic-Denver T, Inc., d/b/a/ Mountain States Toyota, Sonic Automotive, Inc. (collectively, the "Sonic Defendants"), and Toyota Motor Credit Corporation ("Toyota Credit") to stay proceedings in this action and to compel plaintiff to arbitrate his individual claims, filed April 24, 2006 (Dkt. # 15).  By Order entered April 28, 2006, this Court granted defendants' motion to stay discovery pending ruling on the motion to compel arbitration, noting that the motion to compel arbitration appeared to have been filed in good faith, and presented a substantial issue as to whether arbitration should be compelled (Dkt. # 19).  On June 20, 2006, plaintiff filed his response in opposition to the motion to compel arbitration (Plaintiff's Response) together with Exhibits 1 through 5 (Dkt. # 28).  Defendants filed their reply brief on July 5, 2006 (Dkt. #29).  The matter is ripe for

determination. The Court has determined that oral argument would not be of material assistance.

I.  **BACKGROUND**

Plaintiff's complaint in this case, filed on February 14, 2006 (Dkt. # 1), alleges that in February 2004 he sought to purchase a new Toyota Camry automobile and negotiated an agreed price and payment terms (Complaint, ¶ 13). His complaint essentially asserts that due to his lack of ability to speak English, or understand the all-English documents that he was requested by defendants to sign, he was induced by defendants' misrepresentations and concealment into executing documents for the lease of the vehicle, rather than for a purchase, at a price higher than he had agreed to pay, and on terms less favorable than he had negotiated (Complaint, ¶¶ 20-22). Plaintiff avers that he did not understand that he was leasing the automobile (Complaint, ¶ 19), and only found out that he had leased the car when he inquired if he could "payoff the loan early" and was told he could not do that because he had leased the vehicle for a fixed period of time (*id.*, ¶ 23). Plaintiff contends that he informed Defendant Toyota Credit that he had been deceived into a lease rather than a purchase, but that it took no action in response, other than to prepare documents for the outright purchase of the vehicle that had been leased (*id.*, ¶ 28). Plaintiff apparently did pay the "payoff price" to purchase the vehicle, and alleges this was "considerably in excess of the purchase price he had originally negotiated" with defendant's salesperson (*id.,* ¶ 32).

Plaintiff's complaint alleges eight claims for relief which he seeks to bring as a class action on behalf of "[a]ll racial or ethnic minority individuals whose principal or

first language is other than English, and who, since 15 February 2002, have leased a new or used motor vehicle from Sonic Denver." *Id.,* ¶ 45.  Plaintiff claims that defendants' conduct (1) violated 42 U.S.C. § 1981, because it deprived Latino and other nonwhite persons of rights and privileges to make and enforce contracts as are enjoyed by white persons (First Claim); (2) violated 42 U.S.C. § 1982, because it deprived Latino and other nonwhite persons of rights and privileges to purchase, lease or hold personal property as are enjoyed by white persons (Second Claim); (3) violated the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101 *et seq.*, because it constitutes unfair and deceptive business practices within the meaning of that statute (Third Claim); (4) violated the Colorado Uniform Commercial Code, specifically C.R.S. § 4-2.5-108 (Fourth Claim); (5) violated C.R.S. § 12-6-122, providing a statutory right of action for loss due to fraudulent practices by auto dealers (Fifth Claim); (6) constituted common law false misrepresentations (Sixth Claim); (7) constituted fraudulent concealment (Seventh Claim); and (8) constituted negligent misrepresentation (Eighth Claim).

   Plaintiff also makes class allegations against the Sonic Defendants and Toyota, alleging that the Sonic Defendants have a pattern of inducing Latinos and other non-white consumers, particularly those who have limited ability to understand written or spoken English, into leasing cars instead of buying them, even when the Sonic Defendants know that the consumers desire to purchase the cars (*id.,* ¶¶ 34-37). Plaintiff claims that Toyota knows about this discriminatory pattern, receives profits from it, and has done nothing to stop such practices (*id.,* ¶¶ 39-42).

3

The complaint requests an award of actual damages, trebled actual damages under the CCPA claim for defendants' bad faith conduct, punitive damages as allowed by law, attorneys' fees and costs, and pre-judgment interest (Complaint, Prayer for Relief, at 18).

## II.     DEFENDANTS' MOTION

Defendants assert that all of plaintiff's claims are subject to arbitration based on the Lease Agreement signed at the time of the transaction (Exhibit 1 to Defendants' Motion).  The Lease Agreement contains an Arbitration Provision that provides, in pertinent part:

> You agree that any claims arising from or relating to this Lease or related agreements or relationships, including the validity, enforceability, or scope of this Arbitration Provision, at your election or our election, are subject to arbitration.  This includes any claim that arises from or relates to the Lease, whether in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise, and includes, but is not limited to, claims asserted by you against us, Toyota Motor Credit Corporation, and/or any of our or its affiliates . . . .

Exhibit 1 at 4, ¶ 47 (the "Arbitration Provision").  The Arbitration Provision also contains provisions setting forth the procedures under which the arbitration is to be conducted, referencing the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  The Arbitration Provision also includes a sentence providing that if the lessee cannot afford to pay and cannot obtain a waiver of the arbitrator's fees, or if the lessee believes the fees "will be prohibitively expensive or excessive," the lessor will "entertain in good faith any reasonable written request" to pay or reimburse the lessee for all or part of such fees.  *Id.*

In addition, the Arbitration Provision contains language restricting arbitration of claims on an "individual basis" and precluding arbitration "as a class action." The provision contains a savings clause specifying that if any part of the Arbitration Provision is declared invalid or unenforceable under law, such ruling shall not invalidate the remainder of the Arbitration Provision, except that if the provision "prohibiting classwide arbitration is deemed invalid, then this entire Arbitration Provision shall be null and void." Exhibit 1 at 4.

By letter dated April 14, 2006, addressed to plaintiff in care of his attorney after the complaint was filed, defendants demanded arbitration of plaintiff's claims under the above referenced Arbitration Provision (Exhibit 2 to Defendants' Motion). On April 24, 2006, defendants filed their motion asserting that this Court should compel arbitration of plaintiff's individual claims on an individual basis, and stay this case pending the arbitration (Motion at 12).

### III.   PLAINTIFF'S RESPONSE

Plaintiff asserts that the arbitration provisions of the Lease Agreement are not enforceable for several reasons. First, plaintiff asserts that no contract was formed between the parties "given their complete and utter failure to arrive at a meeting of the minds over the contract's essential terms" because plaintiff claims he did not understand what he was signing (Plaintiff's Response at 4-5). Second and relatedly, plaintiff claims the Arbitration Provision is unenforceable because of a lack of mutual assent to the essential terms of the Lease Agreement (Plaintiff's Response at 6-9). Third, the plaintiff argues that the provision prohibiting arbitration of claims on a classwide basis is "contrary to law," should be declared by this Court to be unlawful,

5

and therefore, pursuant to the language of the Arbitration Provision, the entire arbitration arrangement should be declared null and void (Plaintiff's Response at 9-31). Further, the plaintiff argues that whether the arbitration agreement may be enforced is solely an issue for this Court, and not an arbitrator, to decide (Plaintiff's Response at 4-6).

**IV.   ANALYSIS**

Federal law favors arbitration and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). As stated recently by the Supreme Court, the Federal Arbitration Act was enacted to overcome judicial resistance to arbitration. *Buckeye Check Cashing, Inc., v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 1207 (2006). The statute embodies a national policy favoring arbitration, placing "arbitration agreements on an equal footing with all other contracts," holding that such contracts are generally valid and enforceable and may be challenged only on "grounds as exist at law or equity for the revocation of any contract." *Id.* at 1207-08.

The *Buckeye* decision further explains that challenges to the validity of arbitration agreements upon such grounds as specified in the statute may be divided into two types. One type of challenge is specifically to the validity of the agreement to arbitrate, while the other type challenges the contract as a whole, for example on the grounds that the agreement was "fraudulently induced" or because one of the contract's provisions renders the whole contract invalid. *Id.* at 1208. In *Buckeye*, the crux of the class action complaint, alleging violations of the state lending and consumer protection

laws, was that the contract as a whole, including its arbitration provision, was invalid due to an usurious interest charge. *Id.*

In deciding the issues presented there, the *Buckeye* decision stated that the three following established propositions answer the question presented:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts. The parties have not requested, and we do not undertake, reconsideration of those holdings. Applying them to this case, we conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court.

*Id.* at 1209. The first two of these three propositions apply to the instant case here, initiated as it is in federal court. The application of these propositions yields the same result the court reached in *Buckeye*. The challenge to the Arbitration Provision should thus be decided by an arbitrator, not by this Court. *Id.*

Here, it is apparent that plaintiff's challenge is not to the Arbitration Provision itself, but rather to the contract as a whole. He alleges he was fraudulently induced into a lease agreement rather than the purchase agreement he was seeking. He claims the Arbitration Provision should not be enforced because "no contract was ever formed between the parties, given their complete and utter failure to arrive at a meeting of the minds over the contract essential terms." (Plaintiff's Response at 4). There is no allegation in the plaintiff's complaint nor any argument in the Plaintiff's Response challenging the Arbitration Provision itself, other then the argument that the ban on

7

classwide arbitration should render the provision unenforceable. The Court, however, addresses that argument below.

Plaintiff seeks to take his case outside application of the above holding of *Buckeye* by arguing that this case fits into the language that appears in footnote 1 to that decision. *See* 126 S.Ct. 1208, n.1 (Plaintiff's Response at 5). There the Court stated that:

> The issue of the contract's validity is different from the issue of whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent. [Citations omitted.]

Plaintiff apparently argues that his inability to understand spoken and written English is tantamount to depriving him of the capacity to enter into a contract, rendering the issue in this case not whether the contract is "valid," but whether a contract was ever formed.

This Court does not view this case to fit within what may be exceptions to compelling arbitration as described in the footnote in *Buckeye*. Plaintiff here does not claim that he didn't sign the lease agreement, or that he lacked authority to enter into a contract, or that he lacked mental capacity. To the contrary, plaintiff claims he entered into an agreement with the Sonic Defendants. Plaintiff's affidavit states that he "came to an agreement" with the representative of the Sonic Defendants, and describes the terms that he agreed to. *See* Ornelas Affidavit, Exhibit 1 to Plaintiff's Response, at ¶ 10. What plaintiff alleges in his complaint is that the written agreement did not reflect these terms, that he did not understand that the agreement did not reflect the terms he

negotiated, and therefore he was defrauded or deceived. But that is not an assertion tantamount to lack of capacity or failure to enter into any agreement.

Accordingly, this Court must apply the analysis set forth in *Buckeye*. 126 S.Ct at 1209. Because plaintiff challenges the validity of the Lease Agreement, but not specifically its Arbitration Provision, the provision may be enforceable even apart from the remainder of the contract. Accordingly, the plaintiff's challenge to the Lease Agreement here must be first considered by the arbitrator, and not by this Court.

Moreover, contrary to plaintiff's argument, the fact that the Arbitration Provision includes a provision prohibiting arbitration on a classwide basis does not change this result. Although the Tenth Circuit has not addressed the issue of whether a bar against classwide arbitration is enforceable, or whether it may invalidate an otherwise enforceable arbitration agreement, at least five other circuit courts of appeals have held such classwide arbitration bans to be enforceable. Citing these cases, at least one district court in the Tenth Circuit has held that a consumer agreement's prohibition on participation in a class action, or class arbitration proceedings, does not render the agreement unenforceable or unconscionable. *See Edwards v. Blockbuster, Inc.*, 400 F. Supp. 2d 1305, 1309 (E.D. Okla. 2005). The court there found that such provisions are a common feature of consumer arbitration agreements, and numerous courts have recognized that they are valid and fully enforceable, citing to *Jenkins v. First Amer. Cash Advance of Georgia, LLC,* 400 F.3d 868, 877-78 (11th Cir. 2005), *cert. denied*, 126 S.Ct. 1457 (2006); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC,* 379 F.3d 159, 175-75 (5th Cir. 2004); *Carter v. Countrywide Credit Indus. Inc.*, 362 F.3d 294, 301 (5th Cir. 2004); *Livingston v. Associates Finance, Inc.*, 339 F.3d 553, 559 (7th Cir.

2003); *Snowden v. CheckPoint Check Cashing,* 290 F.3d 631, 638 (4th Cir.), *cert denied,* 537 U.S. 1087 (2002); *Johnson v. West Suburban Bank*, 225 F.3d 366, 378 (3d Cir. 2000), *cert. denied,* 531 U.S. 1145 (2001).

Notwithstanding these cases plaintiff urges this Court not to enforce the Arbitration Provision because the classwide arbitration ban will preclude plaintiff and the plaintiff class from vindicating their statutory rights.  He argues that because the plaintiff's claim is of a relatively modest amount, absent the ability to pursue the claim with similarly situated individuals on a classwide basis, his ability to pursue the claim is "small to non-existent." (Plaintiff's Response at 15).  He submits that "even with $3,600 in damages at stake, given the economic realities at work, experienced counsel will only accept these cases for contingent fee representation on a class basis." *Id.* In support of this argument he submits affidavits from experienced plaintiffs' counsel.  *See* Exhibits 4 and 5 to Plaintiff's Response.  He urges that in this situation, because being precluded from pursuing claims on a class basis would effectively preclude plaintiff and the putative class from vindicating the federal and statutory rights asserted in the complaint, the Court should "find the Class Prohibition unlawful and thus unenforceable." (Plaintiff's Response at 15-16).

In support of his argument plaintiff relies on the decision in *Kristian v. Comcast Corporation,* 446 F.3d 25 (1st Cir. 2006), a putative class action antitrust case in which the court held that because of the presence of a bar on class mechanisms in arbitration, it declined to compel the plaintiffs to arbitrate their antitrust claims if that bar remained in place.  446 F.3d at 59.  In reaching this result, the *Kristian* court distinguished the case before it from the cases cited above, in particular *Johnson v.*

10

*West Suburban Bank, supra,* finding that the rationale applied in *Johnson*, where plaintiff was bringing a claim under the Truth-in-Lending Act ("TILA"), does not necessarily apply in the context of a plaintiff's class action antitrust case. The *Kristian* opinion identified the following three factors on which the *Johnson* case relied to determine that the bar on class arbitration did not render the arbitration prohibition unenforceable: first, it noted that class actions do not necessarily give plaintiffs better incentives to bring private enforcement actions under TILA; second, it noted that plaintiff in a TILA case could still find representation without a class action mechanism due to the availability of attorneys' fees and costs; and third, it noted that even if that private enforcement actions fail, there are administrative enforcement procedures that exist "to fill the void." 446 F.3d at 56-57. The *Kristian* concluded that these rationales drawn from the TILA context did not support the validity of a bar to class action arbitration of the plaintiff's antitrust claims.

In discussing the inapplicability of the *Johnson* decision in the antitrust context, given the often "sheer complexity" of such cases, the First Circuit emphasized that unlike a TILA case, which "usually hinges on whether the facts" of a specific transaction establish a violation, in an antitrust case the question of whether a company's action constitutes a violation is usually a complicated question of fact. *Id.* at 57-58. The opinion points out that resolution of such questions typically involve great expense and labor by plaintiff's attorneys, and the commitment of high expert witness fees ranging in *Kristian* allegedly from $300,000 to $600,000, whereas the individual recovery is estimated to range from only a few hundred dollars to a few thousand dollars. *Id.* at 58-59. The Court also rejected the rationale that the opportunity to recover attorneys'

11

fees provided the necessary incentive because antitrust cases are "by their nature difficult and uncertain" and the "disproportion" between the damages likely to be awarded and the attorneys' fees likely to be claimed on behalf of an individual consumer antitrust plaintiff would make it "highly unlikely" that an attorney could justify being made whole by the court. *Id.* at 59, n.21.

Although the *Kristian* opinion may provide a valid rationale for not enforcing a classwide arbitration bar in an antitrust case, this Court finds that the rationale lacks support in the context of the instant case. There is no basis for concluding here that compelling arbitration, even with the bar on classwide arbitration, would effectively preclude the plaintiff from pursuing his claims. Plaintiff here is not seeking only a few hundred dollars, but rather claims that his damages are at least $3,582. *See* Ornelas Affidavit, Exhibit 1 to Plaintiff's Response, ¶ 25. Plaintiff alleges that he is entitled to a trebling of these damages under the CCPA. Complaint, Prayer for Relief, at 18. He further asserts a right to punitive damages and pre-judgment interest. *Id.*

He also claims entitlement to attorneys' fees and costs, and the Court notes that the Arbitration Provision allows recovery of such fees and costs if applicable law gives a party the right to recover such fees. Certain of the statutes under which plaintiff asserts his claims also provide for an award of attorneys' fees. Furthermore, although plaintiff does not expressly raise the costs of the arbitration process as a grounds for finding the classwide ban unenforceable, the Court notes that the Arbitration Provision provides that plaintiff may seek an advance or reimbursement from the defendants for the costs of arbitration if they are found to be prohibitively expensive or excessive (Exhibit 1 at 4). *Cf. Livingston v. Associates Finance, Inc., supra*, 339 F.3d at 556 ("the

fact that Associates agreed to pay *all* costs associated with arbitration forecloses the possibility that the Livingstons could endure any prohibitive costs in the arbitration process.") (emphasis in original).

In addition, unlike the complexity associated with the antitrust case described in *Kristian*, plaintiff's claim essentially involves only one transaction, which occurred over a brief period of time, involving at most perhaps four or five witnesses. There is no indication in any submission by plaintiff that an expert witness is contemplated or that expert witness fees would be incurred. There is no indication that the nature of the plaintiff's own case would require the great expense and labor described in *Kristian*.

This Court also declines plaintiff's invitation to hold unconscionable the classwide arbitration ban contained in the Arbitration Provision. Although plaintiff cites to several cases that have held classwide bans on arbitration to be unconscionable (Plaintiff's Response at 18-25), the decisions are primarily state court cases, and they do not follow the federal circuit court opinions cited above in the *Edwards* decision that have found that such provisions are not unconscionable under the Federal Arbitration Act. *See e.g. Snowden v. CheckPoint Check Cashing, supra*, 290 F.3d at 638 (rejecting the borrower's argument "that the Arbitration Agreement is unenforceable as unconscionable because without the class action vehicle, she will be unable to maintain her legal representation given the small amount of her individual damages.").

In addition, plaintiff's main argument for finding the classwide ban to be unconscionable (Plaintiff's Response at 18-20) is the same argument made above for not enforcing the arbitration agreement, which this Court has already rejected–namely

that plaintiff will be precluded from pursuing his claims if not allowed to proceed on a class basis.

Finally, plaintiff argues that the ban on classwide arbitration is "procedurally unconscionable" because it is included in a "standard-form contract," which he claims gives it an "adhesive nature," presented to him in small English font on a "take it or leave it" basis (Plaintiff's Response at 22). However, the suggestion that unequal bargaining power renders the classwide arbitration prohibition itself unconscionable is undermined by plaintiff's asserted inability to communicate in English, for he would not have had the ability to exercise bargaining power even if the provision has been subject to negotiation. Of course, if the arbitrator finds that the entire Lease Agreement was the product of fraud, "procedurally unconscionable" or invalid because of plaintiff's lack of understanding or for any other reason, the limits of the Arbitration Provision may be found invalid as well. But, as stated above, that is a matter for the arbitrator to determine.

**CONCLUSION**

For the reasons set forth herein, defendants' Motion to Stay This Case and Compel Arbitration is GRANTED in part and DENIED in part. The motion to compel arbitration is GRANTED to the extent it seeks to compel arbitration by the plaintiff of his individual claims on an individual basis. The motion to stay proceedings pending arbitration is DENIED.

Under the facts of this case the Court finds that while plaintiff may have a right to pursue his claims in arbitration, this Court will not compel him to do so over his own objection. The Court also assumes that defendants do not desire to be compelled to

arbitrate if plaintiff does not wish to pursue his claims. Accordingly plaintiff may desire to voluntarily dismiss his complaint and terminate this case.

If plaintiff wishes to pursue the arbitration that the defendants seek to compel, he may pursue any remedies he has under the arbitration agreement, and the arbitrator(s) will have authority to determine the arbitrability of the issues presented.

Thus, the motion to stay proceeding in this case pending such arbitration is DENIED.  Instead, the Clerk of the Court is directed to ADMINISTRATIVELY CLOSE this case, subject to reopening for good cause shown after the completion of the arbitration, if one is commenced.

DATED:  January 29, 2007

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge